

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-10-2006

# USA v. Daraio

Precedential or Non-Precedential: Precedential

Docket No. 05-2460

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Daraio" (2006). *2006 Decisions.* Paper 1183.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1183

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-2460

———

UNITED STATES OF AMERICA

v.

DOROTHEA DARAIO,

<u>Appellant</u>

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Crim. No. 04-00245)
Honorable Joseph E. Irenas, District Judge

———

Argued March 6, 2006

BEFORE:  ROTH and GREENBERG, <u>Circuit</u> Judges, and
BUCKWALTER, <u>District</u> Judge*

(Filed: April 10, 2006)

George S. Leone
Assistant U.S. Attorney
970 Broad Street
Newark, N.J. 07102
Eileen J. O'Connor
Assistant Attorney General
Alan Hechtkopf
Gregory V. Davis
Brian D. Galle (argued)

———

*Honorable Ronald L. Buckwalter, Senior Judge of the United States
District Court for the Eastern District of Pennsylvania, sitting by
designation.

Attorneys, Tax Division
Department of Justice
P.O. Box 502
Washington, D.C. 20044

Attorneys for Appellee

Richard G. Tuttle (argued)
John C. Connell
Archer & Greiner
Suite 1620
One South Broad Street
Philadelphia, PA 19107

Attorneys for Appellant

OPINION OF THE COURT

GREENBERG, Circuit Judge.

## I.  INTRODUCTION

Defendant Dorothea Daraio ("Daraio") appeals from a judgment of conviction and sentence entered on May 5, 2005, in this tax evasion case.  Daraio raises three issues on this appeal.  First, she argues that the evidence at trial coupled with the jury instructions constructively amended the indictment returned against her on which she was tried.  Second, she contends that there was at trial, in the alternative to a constructive amendment of the indictment, a prejudicial variance in the evidence from the terms of the indictment.  In these two contentions Daraio asserts that the government's proofs may have led the jury to convict her of unlawful conduct the indictment did not charge.  Third, Daraio argues that the district court erred in admitting evidence under Federal Rule of Evidence 404(b) ("Rule 404(b) evidence") of her prior non-compliance with federal tax laws to prove her intent to commit the crime charged in this case.  Daraio contends that by reason of any of these errors she is entitled to an outright reversal of her conviction or at least a new trial.  For the reasons set forth below, we will affirm.

2

## II.  FACTS AND PROCEDURAL HISTORY

On August 17, 2004, a grand jury returned a superseding indictment charging Daraio with one count of tax evasion in violation of 26 U.S.C. § 7201 and 18 U.S.C. § 2.[1]  In particular, the indictment charged Daraio with "knowingly and willfully attempt[ing] to evade and defeat the payment of a substantial part of the payroll taxes due and owing by Eagle Security, Inc.[2] to the United States for the quarterly periods that included April 1994 through April 1998, in the amount of approximately $222,607.40, by directing clients of Eagle Security, Inc. to pay their unpaid balances that they owed to Eagle Security, Inc. to E.S.S. Co."  J.A. at 598.  The indictment charged that Daraio gave those directions after or at about the time that the Internal Revenue Service ("IRS") issued levies on ten clients of Eagle Security, Inc. ("Eagle Security") requiring them to pay their balances due to Eagle Security to the IRS.  The government produced evidence at the trial supporting the indictment which we need not describe at length.[3]

Before the start of the presentation of evidence at the trial, the prosecutor in <u>in</u> <u>limine</u> proceedings filed and served a notice that the government would seek to introduce evidence of Daraio's prior tax non-compliance as demonstrated by her personal tax records and tax records from several corporations with which she was involved pursuant to Rule 404(b).  The government sought to introduce this evidence on the theory that, as the district court recognized, "general feelings or general attitude toward the IRS can be proof of willingness or intent."  J.A. at 109-10.  The Rule 404(b) evidence ultimately

---

[1]The superseding indictment differed from the original indictment only inasmuch as it expanded the period included in the charged offense from "the calendar year 1998," J.A. at 594, to "the quarterly periods that included April 1994 through April 1998."  J.A. at 598.  In these circumstances we refer to the superseding indictment as the "indictment."  In this opinion we refer to the parties' original joint appendix as J.A. and to their joint supplemental appendix as Supp. App.

[2]Eagle Security, Inc. provided security services and personnel to its clients.

[3]We do not detail the evidence inasmuch as Daraio does not contend that the evidence supporting the verdict was inadequate.

included the following items:

> (1) Payroll tax records for Joseph Daraio, Daraio's husband,[4] trading as ESS-Co. and Quest Investigators, pertaining to tax periods from 1989-1993 including the records themselves, as well as, for certain tax periods, certifications of a "lack of records" indicating the failure to file tax returns;
>
> (2) Certifications by the IRS that Eagle Security did not file payroll tax returns in 1990-1993 and 1999-2004;
>
> (3) Payroll tax records, again including certifications of lack of records, for ESS-Co., beginning in the third quarter of 1998 through the first quarter of 2004;
>
> (4) Certifications of lack of records for ESS-Co. from 1992-1998 and 2000-2004;
>
> (5) Corporate tax records for Eagle Security from 1990-2003,[5] that showed that it had not filed forms with the IRS in 1999, 2001, and 2002;
>
> (6) Corporate tax records for ESS-Co. from 1998-2003;
>
> (7) Joint personal income tax returns for Joseph Daraio and Daraio from 1984 and 1989-2003.

Over Daraio's continuing objection, the district court admitted the Rule 404(b) evidence, reasoning that evidence of past conduct is relevant when, as in this case, "the defendant has square[ly] raised intent."[6] J.A. at 23. The district court, however, gave the jury the

---

[4]The record is unclear as to the degree of Daraio's involvement in ESS-Co./Quest Investigators. ESS-Co. is a different entity than E.S.S. Co., and ESS-Co. is not the corporation that Daraio allegedly created for purposes of evading tax levies as charged in the indictment.

[5]Corporate tax records cover a broader range of activities and provide more information than payroll tax records.

[6]Although Daraio now asserts that "it is indisputable that intent . . . was never in issue at trial," Appellant's br. at 29, at a pre-trial hearing her attorney did not disagree with the court's statement that "intent is so much the heart of the case." J.A. at 23. See infra Part IV.B

following limiting instruction:

> Ladies and gentlemen of the jury, you will soon, and at various other times during the trial, hear evidence of acts the defendant - - of acts of the defendant that may be similar to those charged in the indictment, but which were committed on other occasions.
>
> You must not consider any of this evidence in deciding if the defendant committed the acts charged in this indictment. However, you may consider this evidence for other very limited purposes.
>
> If you find beyond a reasonable doubt from other evidence in this case, that the defendant did commit the acts charged in the indictment, then you may consider the evidence of similar acts allegedly committed on other occasions, to determine, one, whether the defendant had the intent necessary to commit the crime charged in the indictment; two, whether the defendant had the motive to commit the act charged in the indictment; or, three, whether the defendant willfully committed the acts for which she is on trial, or rather committed them by accident, negligence, or mistake.

J.A. at 79-80.[7]

In addition to the admission of the Rule 404(b) evidence, Daraio takes issue with certain of the prosecutor's arguments and statements at trial. First, in the government's opening statement, the prosecutor identified Daraio as "a woman . . . who thumbed her nose at the IRS for more than a decade," J.A. at 37, and stated that "defendant failed to file her own personal income tax returns for the years 1996, 1997 and 1998." J.A. at 41. The prosecutor also explained the "long and numerous" attempts by the IRS to "get

_____

(discussing whether intent was at issue).

[7]The court substantially repeated this limiting instruction several times during the trial.

5

compliance from [Daraio]," J.A. at 41, as well as the "trust fund penalt[ies] that were assessed against [Daraio] from the mid 1980s." J.A. at 50-51. Moreover, the prosecutor contended that "this was not the first time that [Daraio] was involved in shutting down a company that amassed a huge payroll tax liability using a new company to continue the business, leaving out payroll tax liabilities behind." J.A. at 51.

During the government's case-in-chief, the prosecutor elicited testimony that Daraio was a "pyramiding taxpayer," J.A. at 129, and elicited testimony concerning the seizure of her residence. The prosecutor also stated:

> After 20 years of snubbing the IRS, or doing absolutely everything in her powers to avoid paying her personal corporate and payroll taxes, the defendant is sitting here in this courtroom telling all of you that now she is a champion for the rights of the IRS.
>
> . . . .
>
> The defendant's attitude toward the IRS in paying taxes in general is another indication of willfulness. At every turn the defendant was refusing to become compliant with the IRS. She has shown complete and utter disregard for the IRS in her duty to pay taxes. She says thinks [sic] this she can essentially life [sic] tax free life for the past 20 some years not paying the payroll tax liability for at least three corporations, working her finances so that she pays not more than six dollars of individual income taxes in the same year that she takes $108,000 of horse expenses, not even filing individual income tax returns for three years, and not filing corporate income tax returns since 1993.

J.A. at 416-17.

The prosecutor argued that "[w]e are here for one reason only; that is because the defendant, Dorothea Daraio, is a tax cheat. She has done everything in her power for the last 20 years to live essentially a tax-free life." J.A. at 418. The prosecutor then described Daraio's assets, including her home and her racehorses, and suggested to the jury that Daraio should have sold her home or her racehorses to "pay

6

the IRS what she owes." J.A. at 419-20. Finally, the prosecutor emphasized that from 1994 to 2002, "she could have been compliant . . . [but] she chose not to." J.A. at 454. The prosecutor added that her non-compliance "is why we are here today." J.A. at 454. The prosecutor then asked the jury, "how long is it reasonable for the IRS to wait for this woman to finally decide to get compliant[?]" J.A. at 454.

Much of the defense strategy focused on Daraio's assertion that she "had nothing to do with the preparation of th[e] invoices" asking Eagle Security's clients to make their payments to E.S.S. Co. See, e.g., J.A. at 325-26 (Daraio's denial of preparing invoices or directing employees to prepare the invoices requesting Eagle Security's clients to pay E.S.S. Co.). For example, Cheryl Daraio, Daraio's daughter, an employee at Eagle Security, testified that she mistakenly prepared the duplicate invoices directing Eagle Security's clients to pay E.S.S. Co. instead of Eagle Security. Cheryl testified that she prepared the false invoices, but denied that Daraio directed her to prepare or send the invoices, or even knew about them.

In its final charge, the district court instructed the jury that, "[t]o find defendant guilty[,] . . . you must find that the defendant . . . took an affirmative act or acts in an attempt to evade or defeat this tax as described in the indictment . . . ," J.A. at 546, and explained the three elements of tax evasion under 26 U.S.C. § 7201: (1) willfulness; (2) existence of a tax deficiency; and (3) an affirmative act constituting an evasion or an attempted evasion of the tax. The court then reminded the jury to consider the evidence of prior non-compliance "solely for the limited purpose of deciding, one, whether the defendant had the intent necessary to commit the crime charged in the indictment; whether the defendant had the motive to commit the crime charged [in] the indictment; and whether the defendant committed the acts for which she is on trial, by accident or mistake." J.A. at 551-52. The court told the jury that "the Government must show more than the mere failure to do something, such as the failure to pay taxes which are due." J.A. at 548. The court also read to the jury paragraph nine of the indictment, which contained the charged offense. Finally, the court stated that the "evidence of actions which relate to the failure to comply with laws involving the payment of taxes or the filing of returns . . . are not charged in the indictment." J.A. at 551. After the court charged the jury it gave Daraio an opportunity to object to the charge but she expressly declined to do so.

After the jury returned a guilty verdict and Daraio unsuccessfully moved for (1) a judgment of acquittal, (2) a directed verdict, or (3) a new trial, the court sentenced her to a 41-month custodial term to be followed by a three-year term of supervised release. Daraio then filed a timely notice of appeal.

### III. JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction under 18 U.S.C. § 3231. See United States v. Isenhower, 754 F.2d 489, 490 (3d Cir. 1985), and we have jurisdiction under 28 U.S.C. § 1291. See United States v. Gambone, 314 F.3d 163, 169 (3d Cir. 2003).

We exercise plenary review in determining whether there was a constructive amendment of the indictment and whether there was a variance between the indictment and the proofs at trial. See United States v. Prince, 214 F.3d 740, 756 (6th Cir. 2000). However, inasmuch as Daraio did not raise the constructive amendment and variance arguments in the district court we would consider them on a plain error basis with respect to granting relief if there was an error on either basis. See United States v. Syme, 276 F.3d 131, 148 (3d Cir. 2002). ("[Defendant] did not raise this argument [regarding constructive amendment] in the District Court and we therefore apply the plain error standard of review."). To the extent that our review of the district court's Rule 404(b) ruling requires us to interpret the rules of evidence our review is plenary, but, if the evidence could have been admissible in some circumstances, we would review the district court's decision to admit evidence of prior "bad acts" under Rule 404(b) for an abuse of discretion. United States v. Givan, 320 F.3d 452, 460 (3d Cir. 2003).

### IV. DISCUSSION

A. Variations Between Indictment and Proofs

There are two types of variations between the charges in an indictment and the evidence at trial: (1) amendments of the indictment when its charging terms are altered; and (2) variances, where the charging terms of the indictment are not changed but when

the evidence at the trial proves facts materially different from those alleged in the indictment. United States v. Castro, 776 F.2d 1118, 1121 (3d Cir. 1985). Daraio argues that the evidence adduced at trial coupled with the jury instructions constructively amended the indictment. In this regard Daraio argues that the prosecutor improperly introduced evidence of her repeated failure to withhold payroll taxes, which prejudiced her substantial rights, and suggested that her failure to withhold the proper amounts was a charged crime. Thus, Daraio asserts that the government "tried her not for the indicted crime of interfering with levies, but rather the crime of failing to pay the payroll taxes in the first place, as well as a variety of other wrongs." Appellant's br. at 13.

In the alternative, Daraio argues that the proofs adduced at trial varied from the allegations in the indictment to such a degree that they constituted a prejudicial variance from the indictment. Specifically, she argues that "[w]here the language of the indictment limits the crime charged to diversion of receivables in an effort to defeat IRS levies, trial on the issue of willful failure to withhold the proper amount in the first instance created a prejudicial variance between indictment and proof." Appellant's br. at 24-25 (footnote omitted).

### 1. Constructive Amendment

An indictment is constructively amended when, in the absence of a formal amendment, the evidence and jury instructions at trial modify essential terms of the charged offense in such a way that there is a substantial likelihood that the jury may have convicted the defendant for an offense differing from the offense the indictment returned by the grand jury actually charged.[8] See United States v. Miller, 471 U.S. 130, 140, 105 S.Ct. 1811, 1817 (1985) (constructive amendment occurs when defendant is deprived of "substantial right to be tried only on charges presented in an indictment returned by a grand jury") (quoting Stirone v. United States, 361 U.S. 212, 217, 80 S.Ct. 270, 273 (1960)); see also United States v. Floresca, 38 F.3d 706, 710 (4th Cir. 1994) (There is "[a] constructive amendment to an indictment . . . when either the government (usually during its

---

[8]We are not concerned here with a claim that there was an actual amendment of the indictment by a literal change of its terms.

presentation of evidence and/or its argument), the court (usually through its instructions to the jury), or both, broadens the possible bases for conviction beyond those presented by the grand jury."). Thus, "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him." Stirone, 361 U.S. at 217, 80 S.Ct. at 273. "The key inquiry is whether the defendant was convicted of the same conduct for which he was indicted." United States v. Robles-Vertiz, 155 F.3d 725, 729 (5th Cir. 1998). Constructive amendments "are per se reversible under harmless error review, [and] are presumptively prejudicial under plain error review." Syme, 276 F.3d at 136.

In Stirone, the indictment alleged that the defendant through extortion unlawfully interfered with interstate commerce in the importing of sand into Pennsylvania. Nevertheless, the evidence showed not only importation of sand, but also exportation of steel from Pennsylvania. Moreover, the district court charged the jury that the defendant's guilt could rest on the effect of his conduct on interstate commerce with respect to either sand or steel. 361 U.S. at 214, 80 S.Ct. at 272. The Supreme Court held that this charge coupled with the evidence adduced at trial created an unconstitutional variance between the indictment and the proof, which "destroyed the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury." Id. at 217, 80 S.Ct. at 273; see also United States v. Wozniak, 126 F.3d 105, 110-11 (2d Cir. 1997) (constructive amendment when district court charged jury on evidence relating to marijuana transactions but indictment alleged only cocaine and methamphetamine transactions).

In this case, the indictment specifically charged that Daraio "knowingly and willfully attempt[ed] to evade and defeat the payment of . . . the payroll taxes due . . . by directing clients of Eagle Security, Inc. to pay their unpaid balances that they owed to Eagles Security, Inc. to E.S.S. Co." J.A. at 598. Although we agree with Daraio that the government presented a significant amount of evidence concerning her prior tax non-compliance beyond that charged in the indictment, the district court's instructions ensured that the jury would convict her, if at all, for a crime based on conduct charged in the indictment.

In reaching our conclusion we rely on our case law recognizing that "it is a basic tenet of our jurisprudence that a jury is presumed to have followed the instructions the court gave it." Givan,

10

320 F.3d at 462 (citing <u>United States v. Gilsenan</u>, 949 F.2d 90, 96 (3d Cir. 1991)).  In this case, the district court thoroughly and accurately instructed the jury on the basic elements of tax evasion and focused the jury's attention on the conduct that the indictment charged.  For example, the court told the jury that, although it "heard evidence of actions which relate to the failure to comply with law involving the payment of taxes or the filing of tax returns, [these acts] are not charged in the indictment."  J.A. at 551.  The district court also told the jury that "the [g]overnment must show more than the mere failure to do something, such as the failure to pay taxes which are due and owing."  J.A. at 548.  Moreover, the court supplied the jury with a copy of the indictment for its use during its deliberations.  Therefore, the district court obviated the possibility of the indictment being constructively amended by issuing accurate and thorough jury instructions precluding the jury from convicting Daraio for any conduct other than that which the indictment charged.

We also reject Daraio's argument that "the possibility of [a conviction based on] multiple affirmative acts permeated the trial court's instructions."  Reply br. at 10.  We do not find that the district court's reference to Daraio's "affirmative acts" in a plural sense somehow constructively amended the indictment.  Indeed, it was appropriate for the district court to refer to multiple affirmative acts to reflect the charge that Daraio directed "clients" to pay moneys due to Eagle Security to E.S.S. Co.  Overall we are satisfied from our examination of the jury instructions as a whole that the district court properly focused the jury on Daraio's conduct as charged in the indictment by repeatedly instructing the jury to confine its consideration of the Rule 404(b) evidence to its proper purpose.  Accordingly, we hold that the government's proofs coupled with the district court's instructions did not constructively amend the indictment.[9]

---

[9]In its brief the government indicates that Daraio's "constructive amendment argument might also be read as an assertion that the Government's remarks prejudiced her ability to receive a fair trial."  Appellee's br. at 22.  We note, however, that Daraio's brief does not have a separate section dealing with a possible unfair argument issue and thus we regard her comments about the government's arguments as being subsumed in her constructive amendment and variance arguments.

11

2. Prejudicial Variance

We similarly conclude that the government's proofs and the district court's instructions did not create a prejudicial variance prejudicing Daraio's substantial rights. Initially on the variance point we recognize that "[t]he line between a constructive amendment and a variance is at times difficult to draw." United States v. Adamson, 291 F.3d 606, 615 (9th Cir. 2002). There is a variance "where the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." Castro, 776 F.2d at 1121. When there has not been a constructive amendment of the indictment but rather there only has been a variance between the facts alleged in the indictment and the evidence offered at trial, the proceedings at the trial will not have usurped the constitutionally guaranteed role of the grand jury. Instead, the concerns raised by a variance argument are the fairness of the trial and the protection of the defendant's right to notice of the charges against her and her opportunity to be heard. See, e.g., Kotteakos v. United States, 328 U.S. 750, 757-58, 66 S.Ct. 1239, 1244 (1946); Berger v. United States, 295 U.S. 78, 81-82, 55 S. Ct. 629, 630 (1935). Accordingly, we have recognized that "[t]he variance rule, to the extent that it is constitutionally required, is more of a due process rule than is the flat fifth amendment prohibition against being tried on an indictment which a grand jury never returned." United States v. Crocker, 568 F.2d 1049, 1059 (3d Cir. 1977).

Unlike a constructive amendment, a variance can result in a reversible error only if it is likely to have surprised or otherwise has prejudiced the defense. United States v. Schurr, 775 F.2d 549, 553-54 (3d Cir. 1985). To demonstrate prejudice from a variance, a defendant "must show (1) that there was a variance between the indictment and the proof adduced at trial and (2) that the variance prejudiced some substantial right." United States v. Balter, 91 F.3d 427, 441 (3d Cir. 1996). "A variance does not prejudice a defendant's substantial rights (1) if the indictment sufficiently informs the defendant of the charges against him so that he may prepare his defense and not be misled or surprised at trial, [or] (2) if the variance is not such that it will present a danger that the defendant may be prosecuted a second time for the same offense." United States v. Schoenhut, 576 F.2d 1010, 1021-22 (3d Cir. 1978).

12

In this case there was not a prejudicial variance between the government's proofs and the terms of the indictment. First, the indictment sufficiently informed Daraio of the charges against her so as to put her on notice to prepare her defense. Indeed, the government's proofs concerning her failure to pay over to the government the full amount of the payroll taxes owed to the United States did not vary from the terms of the indictment.[10] Certainly the evidence of which Daraio complains, i.e., that she failed to withhold payroll taxes, is consistent with the allegation in the indictment that "[f]rom in or about April 1994 through in or about April 1998, defendant . . . failed to pay over the full amount of payroll taxes owed to the United States on behalf of Eagle Security and its employees totaling approximately $222,607.40." (emphasis added). After all, if

_____

[10]Daraio's characterization of the government's proofs is seemingly inconsistent. She argues that she was tried for failure to withhold payroll taxes, but in doing so she relies on portions of the trial transcript in which the prosecutor presented evidence of Daraio's failure to pay–not her failure to withhold. See, e.g., J.A. at 483 (prosecutor discussing evidence of Daraio's "willful failure to pay over"); Supp. App. at 163-64 (Daraio testifying that she failed to make payments to IRS towards existing payroll tax liability). Indeed, at one point in her brief in this court, Daraio asserts that she was tried for "failing to pay the payroll taxes." See Appellant's br. at 13 (emphasis added). Moreover, she makes the following puzzling statement in her brief: "The government's theory, in other words, is that [Daraio] willfully failed to withhold payroll taxes so that she could spend the money for personal wants at the time of the failure to withhold." Appellant's br. at 23 (emphasis in original). We are at a loss to understand this comment because a failure to withhold would mean that the employees would receive additional funds over and above what was due them and thus the employer would not retain the funds. Accordingly, the sentence we quote makes sense only if it is referring to a failure to pay over.

Nonetheless, we believe that Daraio intended to use the language as it appears throughout her briefs submitted to this court, and thus intended to argue that the government improperly tried her for "failure to withhold." In any event, we would have rejected her argument if she had contended that there had been a constructive amendment or prejudicial variance on the basis of the government improperly having tried her for "failure to pay" the payroll taxes. Notably, the indictment expressly alleged that "Daraio failed to pay over the full amount of payroll taxes[.]" J.A. at 597 (emphasis added).

13

an employer has not withheld payroll taxes, it hardly would be expected that she nevertheless would pay them to the government.

The prosecutor filed a pre-trial notice to justify the admission of evidence concerning prior non-compliance for time periods not included in the indictment and acts not charged in the indictment. Therefore, the admission of such evidence did not deprive Daraio of the opportunity to prepare her defense. Moreover, as we shall explain, the court properly admitted the evidence under Rule 404(b). See infra Part IV.B (discussing propriety of admission of the Rule 404(b) evidence). Furthermore, the district court repeatedly admonished the jury to limit its consideration of the Rule 404(b) evidence to its appropriate role. Finally, it is clear that even though there was substantial reference at the trial to conduct not within the scope of the indictment, the government proved the material facts of the indictment at the trial and Daraio does not challenge the sufficiency of the evidence. Accordingly, the evidence adduced at trial constituted neither a constructive amendment of the terms of the indictment, nor a prejudicial variance from the allegations in the indictment and we therefore will not reverse Daraio's conviction on either of these two bases.

B. Evidence of Prior Non-Compliance Under Rule 404(b)

We also reject Daraio's argument that the district court erred in admitting evidence of her prior tax non-compliance in violation of Rule 404(b). Daraio argues that Rule 404(b) prohibited the admissibility of the prior non-compliance because "[t]he only issue in the case was whether [she] was the person who committed [the crime charged]." Appellant's br. at 30. She asserts that "criminal intent was never in issue at trial," Appellant's br. at 29, and the intent-serving purpose set forth in Rule 404(b) must be more specific and not merely speak to a general criminal intent. Daraio further argues that the evidence lacked probative value, and "was plainly intended to prejudice (and did prejudice) [her.]" Appellant's br. at 36.

Rule 404(b) governs the admissibility of evidence of "other crimes, wrongs, or acts." It provides, in relevant part, that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of

14

motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." We have recognized that "Rule 404(b) is a rule of inclusion rather than exclusion." Givan, 320 F.3d at 460 (citing United States v. Jemal, 26 F.3d 1267, 1272 (3d Cir. 1994)). In general, we favor the admission of Rule 404(b) evidence when it is relevant for any other purpose than to show the defendant's propensity to commit the charged offense. Givan, 320 F.3d at 460 (citing United States v. Long, 574 F.2d 761, 764 (3d Cir. 1978)).

To demonstrate a proper purpose, the government must "proffer a logical chain of inference consistent with its theory of the case." United States v. Sampson, 980 F.2d 883, 888 (3d Cir. 1992). After the government has specified such a purpose, unless the reason that the evidence is proper is plainly obvious, the district court must "articulate reasons why the evidence also goes to show something other than character" by putting this "chain of inferences into the record." Id. Furthermore, "[w]here such other purposes do exist, protections against improper admission nevertheless remain in Rule 104 relevancy standards and in Rule 403's requirement that probative value yet be balanced against the risk of 'unfair prejudice.'"[11] United States v. Martin, 773 F.2d 579, 582 (4th Cir. 1985); see also Government of Virgin Islands v. Pinney, 967 F.2d 912, 914 (3d Cir. 1992) ("Such evidence is subject only to the limitations imposed by Federal Rules of Evidence 402 and 403."). Thus, we apply a four-part test to determine the admissibility of Rule 404(b) evidence: "(1) the evidence must have a proper purpose; (2) it must be relevant; (3) its probative value must outweigh its potential for unfair prejudice; and (4) the court must charge the jury to consider the evidence only for the limited purposes for which it is admitted." Givan, 320 F.3d at 460.

In cases involving violations of federal tax laws such as tax evasion, "[a] defendant's past taxpaying record is admissible to prove

---

[11]Federal Rule of Evidence 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

willfulness circumstantially." United States v. Ringwalt, 213 F. Supp. 2d 499, 506 (E.D. Pa. 2002) (quoting United States v. Bok, 156 F.3d 157, 165 (2d Cir. 1998)), aff'd, 66 Fed. Appx. 446 (3d Cir. 2003); see also United States v. Johnson, 893 F.2d 451, 453 (1st Cir. 1990) (unindicted acts of tax fraud that occurred subsequent to the indicted acts admissible in tax evasion prosecution to show intent and absence of mistake when defense based on defendant's reliance on advice of friend); United States v. Upton, 799 F.2d 432, 433 (8th Cir. 1986) ("Evidence of [defendant's] questionable compliance with tax laws, both in the years prior to and subsequent to [the years of the charged conduct] is probative of willfulness in the present context."). For example, in United States v. Ringwalt, the district court admitted defendant's tax returns from previous years, which did not pertain to the charged offense. The court held that, "in light of the defendant's theory that the inaccuracies in the 1994 and 1995 returns were the result of mistake or the fault of the accountants, the tax returns from the earlier years were probative on the issues of common scheme or plan as well as willfulness." 213 F. Supp. 2d at 509. The court noted that the defendant's tax returns for the earlier years "showed the existence in those prior years of the identical scheme and plan to evade income taxes that was used by defendant in 1994 and 1995[.]" Id.

Similarly, in United States v. Bok the defendant was charged and convicted for attempted tax evasion in violation of 26 U.S.C. § 7201 and making false statements on corporate income tax returns in violation of 26 U.S.C. § 7206(1). The Court of Appeals for the Second Circuit upheld the district court's decision to admit evidence such as the defendant's failure to file a state personal tax return as well as the failure of the defendant's corporation to file federal and state corporate returns for the years during and after those involved in the indictment. 156 F.3d at 165. The court held that "a defendant's past taxpaying record is admissible to prove willfulness circumstantially" because such evidence is "indicative of an intent to evade the tax system." Id. at 165-66; see also United States v. Ebner, 782 F.2d 1120, 1126 n.7 (2d Cir. 1986) ("The jury may consider evidence of intent to evade taxes in one year as evidence of intent to evade payment in prior or subsequent years.").

Inasmuch as it was essential for the government to make a showing of intent or willfulness to meet its burden of proof in this case, the district court properly admitted evidence of Daraio's prior

16

tax non-compliance under Rule 404(b). Evidence that she committed similar offenses and had a history of non-compliance with the IRS was admissible and relevant to prove willfulness. See Bok, 156 F.3d at 165-66. Furthermore, the district court's limiting instructions were adequate to prevent any unfair prejudice to her from the evidence. As in United States v. Givan, the district court in this case repeatedly issued limiting instructions regarding the Rule 404(b) evidence in which the court emphasized the limited purpose for which the evidence was admissible, thereby minimizing any prejudicial effect. See 320 F.3d at 461-62.

Daraio argues, however, that she did not base her defense on lack of intent or motive, and thus the district court improperly admitted the evidence of her prior tax non-compliance under Rule 404(b). In an abstract sense this argument could be sound because "district courts should generally deem prior bad acts evidence inadmissible to prove an issue that the defendant makes clear he is not contesting. The relevance of the prior bad acts evidence will be minimal in most such cases, since the evidence will not bear on the issues being contested." Jemal, 26 F.3d at 1274; see also United States v. Colon, 880 F.2d 650, 656 (2d Cir. 1989) ("[I]n some circumstances, the nature of a defense put forth by the defendant may reveal that knowledge and intent, while technically at issue, are not really in dispute.") (citation and internal quotation marks omitted). Thus, "the government can not create an issue where none exists and then rely upon Rule 404(b) to argue that prior misconduct is relevant to the manufactured issue." United States v. Morley, 199 F.3d 129, 136 (3d Cir. 1999).

Accordingly, in considering Rule 404(b) evidence we have agreed with the Court of Appeals for the Fourth Circuit that "the use of prior bad acts evidence must be examined meticulously in each case and . . . the probative value of prior bad acts evidence is significantly less when the defense is that the defendant did not perform the charged act at all." Jemal, 26 F.3d at 1273 n.3. Nevertheless this requirement for meticulous examination of the evidence does not preclude results such as that we reached in United States v. Balter, 91 F.3d at 437, in which we allowed testimony revealing the defendant's previous experience as a murderer-for-hire when the "defense was that he was present at the murder scene but that he did not commit the murder." As we explained, "[t]hese statements were relevant to show, among other things, that he had a financial motive to commit the murder and the intent to do so." Id.

17

We hold that Daraio cannot obtain relief by reliance on the lessened value of Rule 404(b) evidence in cases involving a defense that "the defendant did not perform the charged act at all." See Jemal, 26 F.3d at 1273 n.3. We reach this conclusion because we are satisfied that she did not explain clearly in the district court that she was not contesting the allegation that she had the intent to do the acts the indictment charged but rather contended that she did not do the acts at all. Consequently, she did not eliminate the intent issue from the case and thus the Rule 404(b) evidence was relevant to demonstrate her intent.

In coming to our result on the Rule 404(b) evidence issue, we observe that in her reply to the prosecutor's pre-trial Rule 404(b) notice, Daraio explicitly stated that a "major issue[] of dispute will be . . . whether the E.S.S. Co. documents prepared by [her daughter] Cheryl Daraio . . . were prepared in error without fraudulent intent or prepared at the direction of [Daraio] as part of the scheme alleged in the indictment." Supp. App. at 342 (emphasis added). That statement was quite clear and set the framework for the case. Thus, it is not surprising that in explaining its initial decision to admit the Rule 404(b) evidence, the district court stated that Daraio squarely had raised the issue of intent. Indeed, we do not see how it could have reached a different conclusion.

We also point out that her attorney argued that she had relied on her tax attorney in deciding to form E.S.S. Co. as a successor corporation to Eagle Security. Plainly this evidence was intended to demonstrate her benign intent. In addition, on cross-examination Daraio admitted that she faxed duplicate invoices, even though she did not prepare them, to an Eagle Security client. Her attorney later explained that she "did not willfully intend in the act of faxing those documents to Mr. Talbott, to have any money diverted from [Eagle Security] that should have gone to the IRS, to [E.S.S. Co.]." J.A. at 445 (emphasis added). Therefore, we reject Daraio's assertion that intent was not at issue, and we cannot find on this record that the district court erred as a matter of law or abused its discretion in admitting the Rule 404(b) evidence concerning her prior tax non-compliance.

## V. CONCLUSION

For the foregoing reasons the judgment of conviction and

sentence entered May 5, 2005, will be affirmed.