NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2433
_____

UNITED STATES OF AMERICA

v.

JOSEPH CASILE,
Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim. No. 09-00668)
District Judge: Honorable Michael M. Baylson
_____

Submitted Under Third Circuit LAR 34.1(a)
June 7, 2012
_____

Before: SCIRICA, GREENAWAY, JR., and COWEN, *Circuit Judge*s.

(Opinion Filed: August 1, 2012)
_____

OPINION
_____


GREENAWAY, JR., *Circuit Judge*.

A jury in the United States District Court for the Eastern District of Pennsylvania

convicted Appellant Joseph Casile ("Casile") of a single count of interstate travel with

intent to harass or intimidate, in violation of 18 U.S.C. § 2261A(1). The harassment or intimidation occurred after Casile was hired by John Fagan ("Fagan") to recover a large sum of cash that Fagan believed was in the possession of Pat and John Bell (collectively, "the Bells"). Casile filed a motion for judgment of acquittal which the District Court denied. The District Court sentenced Casile to sixty months of imprisonment. This timely appeal followed.

## I.   BACKGROUND

Because we write primarily for the benefit of the parties, we recount only the essential facts.

Fagan, a Pennsylvania resident, asked John Bell if he could store some of his personal belongings at Bell's house in Huntingdon Valley, Pennsylvania. Bell agreed but later notified the Northampton Police Department that Fagan had constructed a storage container with a padlock in his basement. Bell consented to a police search of the container which revealed drug paraphernalia. Later, Bell found a bag containing over $400,000.00 cash in his attic, which he turned over to police.

Fagan had previously been convicted of marijuana distribution, and police opened an investigation of him based on the seized evidence. While cooperating with law enforcement, John Bell called Fagan and informed him, although it was not true, that Bell's former wife had reported a marijuana smell in Bell's home to police and that he had accordingly given the cash to a friend for safekeeping. A police officer, acting in an undercover capacity, followed up with Fagan later that day. Calling himself "Bill," the

2

officer explained that he was laundering Fagan's money in an offshore account, as a favor to Bell. Fagan demanded that his money be returned.

Fagan then met with Casile, also a Pennsylvania resident, at Olga's Diner in Marlton, New Jersey. Fagan told Casile that Bell had stolen approximately $400,000 in bookmaking proceeds from Fagan, and had refused to return it. Fagan agreed to give Casile ten percent of the money if he helped Fagan retrieve it from Bell.

Approximately one month later, Casile and several other men went to the Bells' restaurant, Johnny Apples, in Holland, Pennsylvania. Casile demanded that Pat Bell return Fagan's money to him quickly. Pat Bell felt threatened. John Bell then contacted Fagan and his sister, attempting to resolve the money situation. The next day, Casile made threatening phone calls to John Bell. He later went to John Bell's Philadelphia bar, the New Princeton Tavern. There, Appellant threatened John Bell, as well as workers and patrons of the bar. After this incident, the Bells received 24-hour police protection for several days.

A grand jury indicted Casile on one charge of interstate stalking in violation of 18 U.S.C. § 2261A. He was arrested and detained at the Federal Detention Center ("FDC") in Philadelphia. After a four-day trial, the jury found Appellant guilty. The District Court denied Appellant's motion for judgment of acquittal and sentenced him to sixty months of imprisonment, three years of supervised release, and a fine of $2,500. His post-verdict motions were denied. *United States v. Casile*, No. 09-668, 2011 WL 1755701 (E.D. Pa. May 9, 2011).

Casile filed this timely appeal. He asks this Court to determine (1) whether 18 U.S.C. § 2261A requires the Government to demonstrate a nexus between the interstate travel and the offending harassment or intimidation; (2) whether the jury instructions constituted reversible error; (3) whether the District Court erred in admitting recordings of certain telephone calls Casile placed from the FDC; (4) whether the Government constructively amended the indictment during the course of the proceedings; and (5) whether Casile is entitled to a new trial based on the admission of irrelevant evidence.

## II.    JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction over this case pursuant to 18 U.S.C. § 3231. This Court has jurisdiction over a challenge to the conviction under 28 U.S.C. § 1291.

We exercise plenary review over the District Court's decision to deny a motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, sustaining the verdict if "any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." *United States v. Berrios*, 676 F.3d 118, 132 (3d Cir. 2012) (quoting *United States v. Silveus*, 542 F.3d 993, 1002 (3d Cir. 2008)).

Our review of a district court's decisions concerning jury instructions is for abuse of discretion. *United States v. Tomko*, 562 F.3d 558, 565 (3d Cir. 2009). We "will order a new trial on account of a district court's refusal to give a proposed jury instruction only when the requested instruction was correct, not substantially covered by the instructions given, and was so consequential that the refusal to give the instruction was prejudicial to

4

the defendant." *Id.* (quoting *United States v. Hoffecker*, 530 F.3d 137, 167 (3d Cir. 2008)).

In evaluating a sufficiency of the evidence challenge, we view the evidence in the light most favorable to the Government and sustain the verdict where "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Jones*, 566 F.3d 353, 361 (3d Cir. 2009) (internal quotation marks citation omitted).

In considering whether an indictment was constructively amended or whether there was any variance between the indictment and proofs at trial, our review is plenary. *United States v. Daraio*, 445 F.3d 253, 259 (3d Cir. 2006).

Finally, we review the evidentiary rulings of the District Court for abuse of discretion, reversing only if no reasonable person could reach the conclusion adopted by the District Court. *United States v. Green*, 617 F.3d 233, 239 (3d Cir. 2010). However, our review of the District Court's legal interpretation of the Federal Rules of Evidence is plenary. *Id.*

### III.   ANALYSIS

A. Interstate Travel Nexus

Casile was convicted of violating 18 U.S.C. § 2261A(1), which makes it a crime to:

> "travel[ ] in interstate or foreign commerce . . . with the intent to kill, injure, harass, or place under surveillance with intent to kill, injure, harass, or intimidate another person, and in the course of, or as a result of, such travel

5

places that person in reasonable fear of the death of, or serious bodily injury to, or causes substantial emotional distress to that person [or a member of their family]"

18 U.S.C. § 2261A(1). He argues to this Court that Congress intended to criminalize only interstate travel "substantially related to the intent to commit acts of harassment or intimidation," as evidenced in the legislative history of the provision. (Appellant's Br. 23.)

This proposition does not appear in the text of the statute, nor does Casile provide caselaw supporting it. Instead, he asks us to rely upon the legislative history of the statute, which focuses on interstate stalking, that is, situations in which stalkers follow their victims across state lines. (Appellant's Br. 23-26.) However, the District Court was correct to find that the Supreme Court's decision in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985), forecloses Casile's argument. There, the Supreme Court held that whether a provision's drafters foresaw that a violation of a particular type would be covered by the language of that provision does not determine whether that application of the provision is permissible. *Id.* at 496 n.13 ("Congress' inklings are best determined by the statutory language that it chooses . . . [T]he clanging silence of the legislative history [does not] justify [ ] limits [on the reach of the provision].") (internal quotation marks omitted).

B. Intent and Interstate Travel

Casile next contends that, in order for a violation of 18 U.S.C. § 2261A(1) to occur, a defendant must not only have possessed the intent to harass or intimidate at the

6

time that he crossed a state line, but this intent must also have been a significant or dominant purpose in his interstate travel. Casile raises two separate arguments based on this premise. First, he claims that the Government did not present sufficient evidence at his trial to allow a reasonable juror to find these elements present. Second, he contends that the District Court erred in refusing to instruct the jury that it was required to find these elements. Both of these arguments fail.

Although § 2261A(1) does require that a defendant have possessed the intent to harass or intimidate concurrently with the interstate travel, there is no further requirement that this intent be a significant or dominant purpose of the travel. The former proposition is clearly conveyed by the language of the statute, which prohibits "travel[ ] in interstate or foreign commerce . . . with the intent to . . . harass." 18 U.S.C. § 2261A(1); *see also United States v. Wills*, 346 F.3d 476, 493-94 (4th Cir. 2003) (listing elements of crime to include interstate travel and "that such interstate travel was with the intent to injure or harass [the victim]"); *United States v. Al-Zubaidy*, 283 F.3d 804, 809 (6th Cir. 2002) (finding that the defendant "must have intended to harass or injure [the victim] at the time he crossed the state line").

In contrast, the significant or dominant purpose requirement is absent from the plain text of the statute. Casile asks us to impute it based on our decision in *United States v. Hayward*, 359 F.3d 631 (3d Cir. 2004). In that case, we rejected a challenge to a jury instruction stating that intent to engage in illegal sexual activity must have been a significant or motivating purpose for interstate travel in order to find the defendant guilty

7

of violating 18 U.S.C. § 2423(a), transportation of a minor with intent to engage in criminal sexual activity. 359 F.3d at 637-38. Although the language of that statute is similar in some salient ways to the statute at issue here, we cannot impose a heightened requirement that is not present on the face of § 2261A(1) on that basis alone.

Accordingly, Casile's claim that the District Court erred in failing to provide jury instructions concerning the heightened requirement must fail. Moreover, despite the absence of a jury instruction specifically requiring concurrence of the intent and the interstate travel, "[a] District Court's instruction tracking the exact language of a statute is not plain error, or indeed error at all." *United States v. Williams*, 299 F.3d 250, 258 (3d Cir. 2002).

Casile's sufficiency of the evidence claim must similarly fail. A rational trier of fact could certainly have inferred from the evidence presented at trial that Casile had the intent to harass or intimidate when he returned to Pennsylvania from his meeting with Fagan in New Jersey. The Government was not required to prove more.

Additionally, Casile's claim that the Government failed to demonstrate that the harassment occurred "as a result of" the interstate travel, 18 U.S.C. § 2261A(1) fails for the same reason: a rational trier of fact could have inferred causation from the evidence presented at trial.

C. Constructive Amendment or Prejudicial Variance

Casile asserts that the Government's case at trial constituted a constructive amendment of, or a prejudicial variance from, the crime charged in the indictment. As

8

grounds for this contention, he points out that the indictment charged him with harassment or intimidation of "another person," in the singular, whereas the evidence at trial demonstrated potential harassment or intimidation of both Pat and John Bell.

When analyzing a constructive amendment claim, the "key inquiry is whether the defendant was convicted of the same conduct for which he was indicted." *United States v. Vosburgh*, 602 F.3d 512, 532 (3d Cir. 2010) (quoting *United States v. Daraio*, 445 F.3d 253, 260 (3d Cir. 2006)). Constructive amendment has occurred only where "there is a substantial likelihood that the jury may have convicted the defendant for an offense differing from the offense the indictment returned by the grand jury actually charged." *Daraio*, 445 F.3d at 260 (citations omitted). Given that the jury instructions also referred to the victim in the singular, we cannot find that such a substantial likelihood existed.

A variance occurs "where the charging terms of the indictment are not changed but when the evidence at the trial proves facts materially different from those alleged in the indictment." *Id.* at 259. It results in reversible error only when "it is likely to have surprised or has otherwise prejudiced the defense." *Id.* at 262. Here, even if, despite the jury instruction in the singular, the jury had understood the charge to concern two victims, no "materially different" set of facts has been presented. To reach its verdict, the jury necessarily found that Casile harassed or intimidated at least one victim, as charged in the indictment. Thus, reversal on this ground is not warranted.

D. Admission of Evidence

9

Casile argues that the District Court erred in admitting recordings of telephone calls he made while in prison in which he acknowledged meeting Fagan in New Jersey and engaging in the harassing and intimidating conduct charged in the indictment. His primary contention is that the District Court was incorrect to find this evidence to be intrinsic to the charge against him, under this Court's decision in *United States v. Green*, 617 F.3d at 245, and that it should thus have been analyzed pursuant to Federal Rule of Evidence 404(b) as other bad acts evidence. However, we cannot find that the District Court abused its discretion in determining that these conversations provided evidence that "directly proves" the offense. *Id.* at 248 (citations omitted). Indeed, the evidence directly proved both the interstate travel and harassment elements of the charged crime.

Additionally, Casile contends that the District Court erred in admitting evidence of Fagan's drug distribution activities. He deploys several arguments on this point. First, he asserts that this evidence somehow created a prejudicial variance from the indictment. The definition of variance above demonstrates that this argument is entirely without merit. Second, he posits that the evidence was irrelevant, but "evidence is irrelevant only when it has no tendency to prove a consequential fact," *Gibson v. Mayor and Council of City of Wilmington*, 355 F.3d 215, 232 (3d Cir. 2004) (citation and internal marks omitted). Since the evidence in question explains the circumstances under which Casile was hired to commit the crime, it clearly meets this low threshold. *See id.* (citing *Hurley v. Atl. City Police Dep't.*, 174 F.3d 95, 109 (3d Cir. 1999)). Third, he contends that this evidence was more prejudicial than probative. Given the crucial piece of the narrative

that it provided, we cannot say that the District Court abused its discretion in finding otherwise.

Finally, Casile argues that the evidence related to Fagan's drug distribution from recorded telephone conversations constituted inadmissible hearsay and that it was wrongly admitted under Rule 801(d)(2)(E), the co-conspirator exception. However, no conspiracy was charged here and, although Casile's brief implies that there were many such statements admitted pursuant to this exception, there was in fact only a single set of statements that arguably raised the issue. When the Government introduced the recorded statements of Patty Fagan, John Fagan's sister, Casile objected, citing failure to meet the requirements of the co-conspirator exception. The District Court admitted the conversations but specifically instructed the jury that Patty's statements were not being offered for the truth of the matter asserted. Accordingly, Casile's hearsay-based argument must fail.

## IV.  CONCLUSION

For the reasons set forth above, we will affirm the conviction entered in the District Court.

11