NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCIUT
_____

No. 19-1128
_____

UNITED STATES OF AMERICA

v.

SILVER BUCKMAN,
            Appellant

_____

No. 19-1187
_____

UNITED STATES OF AMERICA

v.

VINCENT FOXWORTH,
            Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-14-cr-0540-001 and 002)
District Judge:  Hon. R. Barclay Surrick

_____

Submitted Under Third Circuit LAR 34.1(a)
March 26, 2020

Before:  JORDAN, RESTREPO, and FUENTES, *Circuit Judges.*

(Filed: April 22, 2020)

_____

OPINION*
_____

JORDAN, *Circuit Judge*.

Silver Buckman and her father, Vincent Foxworth, were convicted of running a fraudulent lease-buyback scheme that defrauded banks. Both now appeal, arguing that errors committed during the proceedings in the District Court render their convictions infirm. Buckman claims that the evidence at trial did not correspond to the charges in the indictment and that that mismatch constitutes a variance requiring reversal of her conviction. She also alleges that her trial counsel was ineffective. Foxworth joins in Buckman's variance argument and also argues that the District Court erred in refusing to sever his case and try him separately. None of those contentions have merit, and, accordingly, we will affirm.

## I. BACKGROUND

From 2006 until 2009, Buckman and Foxworth were involved in a scheme to defraud financial institutions and distressed homeowners.[1] That scheme involved a company Buckman owned and operated called Fresh Start Financial Services ("Fresh Start"). Through Fresh Start, Buckman falsely told homeowners who could not meet their mortgage obligations that there was a method by which they could repair their credit

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

[1] The scheme also involved Cynthia Foxworth, Danette Thomas, Byron White, Franklin Busi, and other defendants "both known and unknown to the grand jury[.]" (App. at 45.)

and avoid foreclosure. The homeowners were told that they would share title to their homes with investors for a period of one year. They would sign contracts selling their homes to the investors, and the proceeds from that sale would be placed in escrow accounts in the name of the original homeowners. Those funds, controlled by Fresh Start, would then be used to pay the mortgages. The homeowners would thus avoid default by making mortgage payments for a year, and would then have the opportunity to regain title to their homes.

If all of that sounds like a farrago of financial mumbo-jumbo and lies, that is because, of course, it is. In reality, there were no investors and no sensible person would have invested in the scheme. The so-called "investors" were Buckman's parents, Vincent and Cynthia Foxworth, and some of her acquaintances, none of whom put their own money at risk. The down payments they made were provided by Buckman through withdrawals from Fresh Start. The straw investors also received $10,000 to $20,000 in fees for "investing" in the homes. Those fees were paid in part by extremely high closing costs hidden in the contracts the homeowners signed. They were also paid using escrow funds that were supposedly meant to pay the homeowners' mortgages. Buckman also used the escrow funds to pay her own personal expenses.

The capital necessary to keep this entire house of cards upright for a while was obtained by defrauding banks and other lenders. Buckman and Foxworth lied to the banks about the income of the purported investors, the source of the down payments, and the existence of lease-buyback contracts. Those misrepresentations and fraudulent omissions allowed them to obtain loans to finance the scheme. The banks would not

3

have approved the loans had they known the true nature of the underlying transactions. All in all, a total of about $3,800,000 in fraudulent financing transactions were entered into with banks and other lenders.

Things that can't go on, don't. The victims and authorities began uncovering the Fresh Start scheme in 2014. By September of that year, a grand jury had returned an indictment charging Buckman, Foxworth, and various co-conspirators with bank fraud in violation of 18 U.S.C. § 1344, wire fraud in violation of 18 U.S.C. § 1343, and conspiracy to commit wire and bank fraud in violation of 18 U.S.C. § 1349.

Buckman and Foxworth went to trial on the charges. Both were found guilty,[2] and both then filed post-trial motions. Buckman contended that her trial counsel was ineffective. Foxworth argued that his trial should have been severed from Buckman's. The District Court denied those motions. Buckman and Foxworth now appeal the denial of their motions and add an unpreserved claim that the evidence presented at trial varied from the indictment.

II.    **DISCUSSION**[3]

This appeal raises three distinct issues. First, we are asked to decide if the evidence presented at trial constituted a variance from the crimes charged in the

---

[2] There were some minor differences in the counts of which the father and daughter were found guilty, but the differences are immaterial to this appeal. Other co-defendants also went to trial. Foxworth had objected to the joint trial and filed a motion to sever, but it was denied.

[3] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

indictment. Second, we are asked whether Buckman's trial counsel was constitutionally deficient in his performance. Third and finally, we are asked whether the District Court abused its discretion in denying Foxworth's motion to sever. Because we resolve each of those issues against Buckman and Foxworth, we will affirm.

## A. There Was No Variance from the Indictment

Buckman asserts that the evidence introduced by the government at trial varied from what was charged in the indictment and so prejudiced her defense. We disagree. Both the trial evidence and the indictment shed light on a single, fraudulent scheme to swindle financial institutions and homeowners. Although Buckman was charged only with crimes against financial institutions, the evidence regarding misrepresentations to homeowners provided important context about the overall workings of her fraud. There was therefore no variance between the indictment and the evidence introduced at trial.

### 1. Standard of review

As a threshold matter, the parties disagree about the correct standard of review. The government contends that we should review only for plain error, whereas Buckman asserts that our review is de novo. The government is correct, as Buckman failed to preserve her objection.[4]

---

[4] When reviewing for plain error, we "can correct an error not raised at trial where (1) the district court erred; (2) the error was clear or obvious; and (3) the error affected the appellant's substantial rights, which typically means that there is a reasonable probability that the error affected the outcome of the proceedings." *United States v. Foster*, 891 F.3d 93, 113 n.15 (3d Cir. 2018) (quotation marks omitted).

5

At no time during the trial did Buckman (or Foxworth) give the District Court an opportunity to rule on the variance argument. The closest anyone got to such an objection came during the government's opening argument. At that time, the government indicated that it would introduce evidence regarding the homeowners. Counsel for one of the co-defendants objected, noting that, for "fraud against the homeowners[,]" the five-year statute of limitations had "gone a long time ago." (App. at 126.) Co-counsel thus asserted that referring to the fraud perpetrated on the homeowners was "too close to the line[.]" (App. at 127.) That objection, which was not made by Buckman but was still credited to her,[5] in no way indicated that the basis for the objection was a purported variance from the charges in the indictment. It was thus insufficient to preserve the objection.[6] *See United States v. Sandini*, 803 F.2d 123, 126-27 (3d Cir. 1986) (noting that an objection does not preserve an issue when it fails to specifically identify the issue or the issue is not apparent from the context of the objection).

---

[5] Buckman's lawyer never made any objection at all. Buckman instead relies on the objection made by counsel for co-defendant Danette Thomas. That is plausible in this case because of the District Court's ruling that an objection from one defendant would be considered an objection from all. Foxworth, who adopted Buckman's variance argument, enjoys the same benefit.

[6] Buckman's post-trial motion for a new trial cannot be construed as preserving the objection for precisely the same reason. That motion also couched its argument in terms of relevance, arguing that the evidence "did not bear upon the question before the jury[.]" (App. at 1463.)

2.      The trial evidence did not vary from the indictment

A variance occurs when "the charging terms of the indictment are not changed but when the evidence at the trial proves facts materially different from those alleged in the indictment." *United States v. Daraio*, 445 F.3d 253, 259 (3d Cir. 2006). A variance from the indictment raises concerns regarding the "fairness of the trial and the protection of the defendant's right to notice of the charges against her and her opportunity to be heard." *Id*. at 261. But a variance "result[s] in … reversible error only if it is likely to have surprised or otherwise has prejudiced the defense."[7] *Id*. at 262. In this case, there was no variance to begin with, so the question of prejudice is irrelevant.

In numerous places, the indictment made plain that defrauding homeowners was inextricably tied to defrauding the financial institutions. The very first page of the indictment stated that Buckman and Foxworth "devised and executed various schemes to defraud financially distressed homeowners, federally insured banks, and others[.]" (App. at 45.) It went on to say that Buckman and Foxworth conspired "to devise a scheme and artifice to defraud homeowners and lenders, and to obtain money and property from the homeowners and lenders, including federally insured financial institutions, by means of materially false and fraudulent pretenses, representations, and promises[.]" (App. at 52.) The indictment further charged that the "object of the

---

[7] Such prejudice arises if either the indictment insufficiently informs the defendant of the charges such that he was misled or surprised at trial, or there is a danger that that he may be prosecuted a second time for the same offense. *Daraio*, 445 F.3d at 262.

conspiracy" was to "obtain money and property from financially distressed homeowners and lenders by making materially false and fraudulent misrepresentations." (*Id*.)

It was thus exceedingly clear that the government would present evidence that the defendants defrauded homeowners. Such evidence was plainly pertinent to the conspiracy to defraud financial institutions, as laid out in the indictment. And because those allegations were explicitly laid out, there is no concern regarding Buckman's or Foxworth's "right to notice of the charges against her and her opportunity to be heard." *Daraio,* 445 F.3d at 261. Because the evidence at trial matched the charges in the indictment, there was no variance.

**B.      Buckman's Counsel Was Not Ineffective**[8]

Buckman next contends that her counsel was ineffective because he failed to attend an informal conference with government lawyers and displayed a lack of preparation at certain points during the trial. She claims she is entitled to a presumption of prejudice, or, failing that, that she was actually prejudiced by her lawyer's deficient performance. As the District Court's thorough opinion accurately explained, those complaints are meritless.

---

[8] Ordinarily, we do not review claims of ineffective assistance of counsel on direct appeal. *United States v. Thornton*, 327 F.3d 268, 271-72 (3d Cir. 2003). Both parties agree, however, that this specific issue is ripe for review, and we do not disagree. "We review the district court's findings of fact for clear error. We must make an independent judgment, however, on whether the facts thus found constitute constitutionally ineffective assistance of counsel." *Gov't of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1430–31 (3d Cir. 1996).

Claims of ineffective assistance are governed by the two-part standard laid out in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the lawyer's performance must have fallen "below an objective standard of reasonableness." *Id*. at 688. Second, the defendant must have been prejudiced by the lawyer's deficient performance. *Id*. at 692. In some situations, however, prejudice may be presumed because it "is so likely that case-by-case inquiry into prejudice is not worth the cost." *Id*.

### 1. Buckman is not entitled to a presumption of prejudice

Buckman argues that the proper standard for evaluating her ineffective assistance claim is provided by *United States v. Cronic*, 466 U.S. 648 (1984). In *Cronic*, the Supreme Court held that prejudice may be presumed in the context of a Sixth Amendment violation when "circumstances [exist] that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." 466 U.S. at 658. One such circumstance is when "the accused is denied counsel at a critical stage of [the] trial." *Id*. at 659. The Supreme Court has stated that a critical stage means "a step of a criminal proceeding, such as arraignment, that h[olds] significant consequences for the accused." *Bell v. Cone*, 535 U.S. 685, 696 (2002). And we have emphasized that *Cronic* "prescribes a presumption of prejudice only with regard to those critical stages of litigation where a denial of counsel would necessarily undermine the reliability of the entire criminal proceeding." *Ditch v. Grace*, 479 F.3d 249, 255 (3d Cir. 2007).

The only time when Buckman's counsel was absent during the case was for two out-of-court meetings with the government. At those meetings, the parties discussed *Bruton* objections that some defendants had raised to the government's plan to introduce

9

prior testimony from civil suits against the defendants.[9]  Buckman's counsel declined to raise a *Bruton* objection, and so did not attend those meetings.

Such informal meetings are not a "critical stage" of the trial within the meaning of *Cronic*.   As the District Court correctly observed, "[t]he absence of Buckman's trial counsel at the meetings with the Government to resolve objections to transcripts did not in any way undermine the reliability of the criminal proceeding.  There were ample opportunities for Buckman's trial counsel to raise objections to the testimony of her co-Defendants to the extent that he believed they posed issues under *Bruton*."  (App. at 1490.)  There is no basis on this record to apply the *Cronic* presumption of prejudice.

2.      Buckman was not prejudiced by her trial counsel

Under *Strickland*, to prove prejudice, a defendant must demonstrate that "counsel's errors were so serious as to deprive [her] of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.  "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."  *Id*. at 693. Instead, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  Buckman cannot meet that standard.

As the District Court observed, "[t]he evidence of [Buckman's] guilt was overwhelming."  (App. at 1495.)  There were dozens of witness and hundreds of exhibits

---

[9] In *Bruton*, the Supreme Court held that, in some situations, admission of a non-testifying co-defendant's confession inculpating the defendant violates the Sixth Amendment's Confrontation Clause because the defendant has no opportunity to cross-examine the co-defendant.  *Bruton v. United States*, 391 U.S. 123, 126 (1968).

introduced over a four-week trial, most of them directly implicating Buckman. Judged against that veritable tsunami of inculpatory evidence, counsel's purported lapses are utterly insignificant. None of them could have affected the outcome of the trial. Buckman thus fails to make the requisite showing under the prejudice prong of *Strickland*, and that is sufficient to defeat her argument.

### C. Foxworth's Trial Need Not Have Been Severed[10]

Foxworth contends that the District Court abused its discretion when it denied his motion to be tried separately from Buckman. It did not.

"There is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). Thus, even if a trial court abused its discretion in denying severance, reversal is only appropriate if "clear and substantial prejudice" resulted from trying defendants together. *United States v. McGlory*, 968 F.2d 309, 340 (3d Cir. 1992). "Neither a disparity in evidence, nor introducing evidence more damaging to one defendant than others entitles seemingly less culpable defendants to severance." *United States v. Eufrasio*, 935 F.2d 553, 568 (3d Cir. 1991).

Foxworth has failed to meet those standards. He was found guilty of participating in an elaborate fraudulent scheme run by his daughter. They were, both of them, thoroughly enmeshed in the fraud. It thus made perfect sense for him to be tried alongside her. Furthermore, the jury verdict acquitting Foxworth on one of the counts

---

[10] We review a district court's denial of a motion for severance for abuse of discretion. *United States v. Hart*, 273 F.3d 363, 369 (3d Cir. 2001).

11

amply demonstrated the jury's ability to compartmentalize information and judge his guilt separately from that of Buckman. There is no basis to conclude that the trial court abused its discretion in refusing to sever Foxworth's trial from Buckman's.

## III.   CONCLUSION

For the foregoing reasons, we will affirm.